# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MELVIN GUTIERREZ GUILLEN and
MARLENY PINEDA GUTIERREZ,

        Plaintiffs,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 20-1713 (MJD/ECW)

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, and UNITED
STATES CUSTOMS AND IMMIGRATION
ENFORCEMENT,

        Defendants.

Nicholas Ratkowski, Contreras & Metelska, P.A., Counsel for Plaintiffs.

David W. Fuller, Assistant United States Attorney, Counsel for Defendants.

## I.   INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary

Judgment [Docket No. 40] and Plaintiffs' Cross-Motion for Summary Judgment

[Docket No. 46].  The Court heard oral argument on September 15, 2021.

## II.   BACKGROUND

### A.   Factual Background

1

###### 1.    The Parties and Removal Proceedings

According to the Amended Complaint, Plaintiff Melvin Gutierrez Guillen is a citizen of El Salvador who lives in Minnesota with his wife, Plaintiff Marleny Pineda Gutierrez.  (Am. Compl. ¶ 7.)  Gutierrez's claims have been dismissed, so the Court limits the background to facts regarding Guillen.

On March 11, 2016, Guillen was apprehended after crossing the Rio Grande River and entering the United States without authorization.  (Id. ¶ 19.)  On April 28, 2016, Defendant United States Department of Homeland Security ("DHS") placed Guillen in removal proceedings before the Executive Office for Immigration Review.  (Id. ¶ 7.)  Guillen requested asylum, but his claim was rejected, and the immigration judge ordered him removed on April 11, 2019. (Id.)  Part of the reason that the immigration judgment ordered removal was because of inconsistencies between Plaintiffs' asylum affidavits and the testimony they gave to an asylum officer through an interpreter during Plaintiffs' credible fear interviews.  (Id. ¶ 22.)  On May 8, 2019, Guillen appealed the removal to the Board of Immigration Appeals.  (Id. ¶ 7.)  According to counsel's representations at the time of oral argument on the cross-motions for summary judgment, that appeal is still pending.

2

Defendant United States Citizenship and Immigration Services ("USCIS") is a subcomponent of DHS that employs asylum officers who conduct credible fear interviews and process applications for asylum.  (Am. Compl. ¶ 10.)

Defendant United States Customs and Immigration Enforcement ("ICE") is a subcomponent of DHS and is responsible for immigration investigations, enforcement, and removal operations.  (Am. Compl. ¶ 11.)

### 2.      FOIA Requests

By letter dated June 13, 2019, Plaintiffs sent two Freedom of Information Act ("FOIA") requests to USCIS by email.  (Pineiro Decl., Ex. B.)

Guillen requested (i) copies of Guillen's credible fear interview transcript; (ii) the metadata from audio or video recordings of the interview; (iii) the name and language qualifications of the asylum officer who conducted the credible fear interview; and (iv) the name and language qualifications of the interpreter who conducted the credible fear interview.  (Id.)

According to the Amended Complaint, on July 11, 2019, USCIS sent Plaintiffs letters acknowledging Plaintiffs' FOIA requests.  (Am. Compl. ¶ 30.) The acknowledgment letters stated that the FOIA requests involved unusual

circumstances and, so, USCIS was extending the time period to respond by 10 additional working days.  (Id. ¶ 33.)

On May 26, 2020, USCIS provided Guillen with a partial determination letter stating that USCIS had "identified 659 pages that are responsive to your request."  (Am. Compl. ¶ 43.)  USCIS disclosed 600 pages in their entirety, disclosed 34 pages in part, and withheld 6 pages in full.  (Id. ¶ 44.)  USCIS stated that the redactions were made "pursuant to 5 U.S.C. § 552 (b)(5), (b)(7)(c), and (b)(7)(e) of the FOIA."  (Id. ¶ 45.)  Finally, USCIS stated that it had located 19 pages of potentially responsive documents that may have originated from ICE and had sent those documents and a copy of Guillen's FOIA request to the ICE FOIA Office for consideration and a direct response to Guillen.  (Id. ¶ 46.)  The documents were referred to ICE because they were ICE equities, meaning they originated and belong to ICE.  ICE assigned this referral tracking number 2020-ICFO-73036.  (Pineiro Decl. ¶ 12.)

On July 8, 2020, Guillen administratively appealed USCIS's FOIA response, including objecting to portions of the record referred to ICE.  (Am. Compl. ¶ 48.)  On July 21, 2020, Guillen received a letter dated July 13, 2020 from USCIS stating that USCIS had "decided to release 10 additional pages to you."

(Id. ¶ 49.)  The letter reiterated that potentially responsive documents might have originated from ICE and that those documents and the FOIA request had been sent to ICE for consideration and direct response to Guillen.  (Id. ¶ 52.)

ICE had not yet processed the 19 referral pages or provided them to Plaintiffs by August 6, 2020.  (Pineiro Decl. ¶ 13.)  ICE avers that USCIS and ICE have a substantial backlog due to a dramatic increase in the volume and complexity of FOIA requests, the COVID-19 pandemic, and difficulty hiring for unfilled positions due to the pandemic.  (Pineiro Decl. ¶¶ 5-8.)  In response to this increased workload, the ICE FOIA Office has adopted a court-sanctioned practice of handling backlogged requests on a first-in, first-out basis and not prioritizing one request over another.  (Id. ¶ 8.)

Plaintiffs filed this FOIA lawsuit against DHS, USCIS, and ICE on August 6, 2020.  On November 4, 2020, ICE sent a final response letter, dated September 29, 2020, to Guillen and produced the 19 pages of records referred by USCIS. (Pineiro Decl. ¶ 15; Pineiro Decl., Ex. D, letter; Pls. Ex. 1, Responsive Documents.) The cover letter stated that portions of the 19 pages were redacted pursuant to FOIA exemptions 6, 7(C) and 7(E).  (Pineiro Decl. ¶ 15; Pineiro Decl., Ex. D.)

ICE has prepared a <u>Vaughn</u> Index pursuant to <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).  (Pineiro Decl. ¶ 17; Pineiro Decl., Ex. A.)  The <u>Vaughn</u> Index describes each redaction and the FOIA exemption being applied.  (<u>Id.</u>)

### B.    Procedural History

On August 6, 2020, Guillen and Gutierrez filed a Complaint against DHS, USCIS, and ICE in this Court.  [Docket No. 1]  Subsequently, ICE sent certain documents and a final response letter to Plaintiffs.

On November 16, 2020, Plaintiffs filed an Amended Complaint against DHS, USCIS, and ICE alleging: Count 1: Unlawful Delay (USCIS) (Guillen); Count 2: Unlawful Delay (ICE) (Guillen); Count 3: Unlawful Delay (USCIS) (Gutierrez); Count 4: Unlawful Delay (ICE) (Gutierrez); Count 5: Unlawful Withholding (USCIS) (Guillen); Count 6: Unlawful Withholding (ICE) (Guillen); Count 7: Unlawful Withholding (USCIS) (Gutierrez); Count 8: Unlawful Withholding (ICE) (Gutierrez); and Count 9: Inadequate Search (USCIS) (Guillen).  [Docket No. 25]

Plaintiffs and Defendant USCIS settled [Docket No. 31] and, on January 22, 2021, the Court dismissed all claims against USCIS [Docket No. 33].  The parties further agree that Count 4 is moot and Count 8 has been abandoned.  (<u>See, e.g.</u>, [Docket No. 48] Pls. Brief in Support at 1-2.)  Thus, the only remaining claims

before the Court are Count 2: Unlawful Delay (ICE) (Guillen); and Count 6:

Unlawful Withholding (ICE) (Guillen).  These claims are based only on the

redactions applied to the portions of the 19 pages of record produced in 2020-

ICFO-73036.

Remaining Defendants DHS and ICE move for summary judgment and

dismissal of the two remaining claims [Docket No. 40], and Plaintiffs move for

summary judgment in their favor on the two remaining claims and to compel

Defendants to release the information previously withheld pursuant to

Exemptions 6 and 7(C) [Docket No. 46].

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  Amini v. City of

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

### B.    FOIA Standard

FOIA

> authorizes federal courts to ensure private access to requested
> materials when three requirements have been met.  Under 5 U.S.C. §
> 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an
> agency has (1) "improperly"; (2) "withheld"; (3) "agency records."
> Judicial authority to devise remedies and enjoin agencies can only be
> invoked . . . if the agency has contravened all three components of
> this obligation.

Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980).

If a plaintiff sues an agency for withholding records responsive to a FOIA

request, the district court "has jurisdiction to enjoin the agency from withholding

agency records and to order the production of any agency records improperly

withheld from the complainant," and "the court shall determine the matter de

novo . . . and the burden is on the agency to sustain its action."  5 U.S.C. §

552(a)(4)(B).

"[T]he vast majority of FOIA cases can be resolved on summary judgment.

. . ."  Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir.

2011).

> Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. To defeat a motion for summary judgment, the nonmoving party need only present evidence from which a jury might return a verdict in his favor.

Miller v. U.S. Dept. of Agric., 13 F.3d 260, 262 (8th Cir. 1993) (citations omitted).

> A court's primary role . . . is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position . . . . If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

Barney v. Internal Revenue Serv., 618 F.2d 1268, 1272 (8th Cir. 1980) (citation omitted).

## C.   Count 2: Unlawful Delay

In Count 2, Guillen alleges that more than 30 business days had passed, and ICE had failed to provide a determination regarding whether it would comply with his referred FOIA request. (Am. Compl. ¶¶ 82-87.) He asserts that this failure "violates 5 U.S.C. § 552(a)(6)(A)(i), as well as the regulations promulgated under FOIA." (Am. Compl. ¶ 87.)

9

### 1.    FOIA Deadlines and Constructive Exhaustion

As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress. But if an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requester is deemed by statute to have fulfilled the exhaustion requirement.  <u>See</u> 5 U.S.C. § 552(a)(6)(C)(i).

To trigger the exhaustion requirement, an agency must make and communicate its "determination" whether to comply with a FOIA request—and communicate "the reasons therefor"—within 20 working days of receiving the request, or within 30 working days in "unusual circumstances."  <u>Id.</u> § 552(a)(6)(A)(i), (a)(6)(B)(i).  If the agency has made and communicated its "determination" in a timely manner, the requester is required to administratively appeal that "determination" before bringing suit.  But if the agency has not issued its "determination" within the required time period, the requester may bring suit directly in federal district court without exhausting administrative appeal remedies.

<u>Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n</u>, 711 F.3d 180, 182 (D.C. Cir. 2013).

### 2.    Mootness

#### a)    Mootness Standard

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies."  <u>Haden v. Pelofsky</u>, 212 F.3d 466, 469 (8th Cir. 2000).  "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a

change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot." <u>Id.</u> (citation omitted). "[I]f this case is indeed moot, we must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." <u>Id.</u> (citation omitted). "[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998) (citation omitted).

### b) Mootness of Count 2

"In FOIA cases, mootness occurs when requested documents have already been produced." <u>Urban v. United States</u>, 72 F.3d 94, 95 (8th Cir. 1995) (quoting <u>In re: Wade</u>, 969 F.2d 241, 248 (7th Cir. 1992)). "Production of the documents nullifies the legally cognizable interest the requesting party possesses in the outcome of the lawsuit." <u>In re: Wade</u>, 969 F.2d at 248.

"In a FOIA action challenging an agency's failure to comply with statutory deadlines established in 5 U.S.C. §§ 552(a)(6)(A) or 552(a)(6)(B), if the agency produces records after a complaint is filed, the plaintiff's lawsuit is rendered moot." <u>Simon v. FBI</u>, Civil No. 16-704 (ADM/KMM), 2016 WL 5109543, at *3-4 (D.

Minn. Aug. 29, 2016) (citing <u>Heide v. LaHood</u>, 406 Fed. Appx. 83 (8th Cir. 2010)), <u>adopted</u>, 2016 WL 5219582 (D. Minn. Sep. 20, 2016).  If the agency fails to respond in a timely manner, the plaintiff is deemed to have exhausted administrative remedies and may file suit directly in federal court, which is what Plaintiffs have done here.  No additional relief for ICE's slow response is available.  <u>See</u> <u>Heide</u>, 406 F. App'x at 83.  Thus, Count 2 is dismissed as moot.

### D.     Count 6: Unlawful Withholding

In Count 6, Guillen alleges that ICE's improper withholding of the redacted portions of the 19 pages of agency records without adequate justification violates FOIA.  (Am. Comp. ¶¶ 138-39.)

### 1.     FOIA Withholding Standard

FOIA contains "specific exemptions from disclosure."  <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989).  However, "disclosure, not secrecy, is the dominant objective" of FOIA; thus, the exemptions are "narrowly construed," and "the burden is on the agency to sustain its action."  <u>Id.</u> (citations omitted).  "Despite these pronouncements of liberal congressional purpose, this Court has recognized that the statutory exemptions are intended to have meaningful reach and application."  <u>Id.</u>

## 2.    Information Redacted

Defendants assert that they are entitled to summary judgment because ICE has disclosed all 19 pages of non-exempt material provided to it by USCIS that was responsive to Plaintiffs' FOIA requests to USCIS.  ICE properly redacted private information of employees and third parties and law-enforcement sensitive material from those disclosures.

As set forth in the <u>Vaughn</u> Index (Pineiro Decl., Ex. A), three types of information were redacted from the documents provided to Guillen: 1) names, signatures, and other identifying information of deportation officers, asylum officers, and other immigration officers; 2) the name and other personal identifying information of the bond obligor and the bond receipt and check numbers; and 3) database numbers such as the FBI number and Event ID number.  These three types of information were redacted pursuant to three FOIA exemptions: Exemptions 6 and 7(C) were applied to the first two types of redactions, and Exemption 7(E) was applied to the database numbers.

Plaintiffs do not challenge ICE's redaction of information related to the bond obligor.  ([Docket No. 48] Pls. Brief at 22; Vaughn Index at 9-11.)  Nor do they challenge any of the redactions on pages 8-15 of the documents.  ([Docket No. 48] Pls. Brief at 22.)  Plaintiffs also waive their claim that the 7(E) redactions

were unlawful.  ([Docket No. 48] Pls. Brief at 51.)  Thus, only the Exemption 6

and 7(C) redactions of ICE and USCIS employee names are at issue.

### 3.     Unintentional Disclosure

Plaintiffs note that, on page 8 of the produced documents, ICE failed to

redact a number of items it claims should be redacted.  ICE's mistaken failure to

redact the identifying information for the bond obligor and ICE employee on

page 8 does not waive the employees' right to privacy in their personal

information and has no bearing on the Court's analysis of the applicability of

Exemptions 6 and 7(C).  See, e.g., Canning v. DOJ, 567 F. Supp. 2d 85, 95 (D.D.C.

2008) ("It would be contrary to the spirit of FOIA to deprive an individual of his

privacy rights because of an agency's administrative error.").

### 4.     Exemption 6

#### a)     Exemption 6 Standard

Exemption 6 exempts from disclosure matters contained in "personnel and

medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The Supreme

Court has given the term "similar files" a broad meaning: "the exemption was

intended to cover detailed Government records on an individual which can be

identified as applying to that individual." U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) (cleaned up).  The Eighth Circuit "construe[s] Exemption 6 broadly as a general exemption that excludes those kinds of files the disclosure of which might harm the individual." Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency, 836 F.3d 963, 970-71 (8th Cir. 2016) (finding "names, addresses, telephone numbers, GPS coordinates," among other information, of owners of concentrated animal feeding operations ("CAFOs") was protected under Exemption 6, even though that information was available from other public sources including state governments, because "the disclosure of such information would constitute a substantial invasion of privacy, because it would facilitate unwanted contact with CAFO owners by FOIA requesters and their associates, and even potential harassment of CAFO owners and their families").

> An agency's review under Exemption 6 involves three steps.  First, the agency must determine whether the request seeks personnel, medical, or similar files.  . . .

> The agency must then determine whether disclosure would compromise a "substantial" privacy interest.  If the agency determines that there is a substantial privacy interest in the information, the agency must then balance the privacy interest of the individual against the public interest in disclosure to determine whether the exemption applies.

Am. Farm Bureau Fed'n, 836 F.3d at 970 (citations omitted).  "A reviewing court cannot substitute its judgment for a permissible judgment of the disclosing agency, but the agency must examine the relevant factors and articulate a satisfactory explanation for its action."  Id.

> **b)**    **Whether the Redacted Information is Part of a Personnel, Medical, or Similar File**

The names of low-level government employees are similar to personnel files.  For example, the Eighth Circuit has held that that Exemption 6 applied to the EPA's "disclosure of names, addresses, phone numbers, e-mail addresses, and GPS coordinates [of concentrated animal feeding operations and their owners]" because that information, although publicly available elsewhere, opened the concentrated animal feeding operations owners up to harassment and the information did "not directly shed light on the agency's performance of its statutory duties."  Am. Farm Bureau Fed'n, 836 F.3d at 972-73.  See also, e.g., Jud. Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 152 (D.C. Cir. 2006) (holding that Exemption 6 covers "not just files, but also bits of personal information, such as names and addresses").

> **c)**    **Whether Disclosure Would Compromise a Substantial Privacy Interest**

> Because FOIA requires disclosure to "any person," the balancing of
> the privacy against the public interest cannot depend on the identity
> and specific purpose of the party requesting the information.  If it
> must be released to one requester, it must be released to all,
> regardless of the uses to which it might be put.

Painting & Drywall Work Preservation Fund, Inc. v. Dep't of Hous. & Urb. Dev.,

936 F.2d 1300, 1302 (D.C. Cir. 1991) (citations omitted).

Employees involved in law enforcement and other sensitive occupations

possess a substantial privacy interest in their identities and work addresses.  See,

e.g., Baker v. FBI, 863 F.3d 682, 684 (7th Cir. 2017) (protecting names of FBI

agents and Chicago police officers involved in criminal investigation under

Exemptions 6 and 7(C)); Solers, Inc. v. IRS, 827 F.3d 323, 332-33 (4th Cir. 2016)

(holding that "IRS employees, as well as other government employees, have a

substantial interest in the nondisclosure of their identities and their connection

with particular investigations because of the potential for future harassment,

annoyance, or embarrassment," under Exemptions 6 and 7(C)); Long v. OPM,

692 F.3d 185, 194 (2d Cir. 2012) (holding that, under Exemption 6, OPM properly

withheld both names and duty-station information for over 800,000 federal

employees in five sensitive agencies (ATF, DEA, DoD, Secret Service, and U.S.

Mint) and twenty-four sensitive occupations, including, inter alia, immigration

inspection, border patrol agent, custom patrol officer, customs inspection, customs and border protection, customs and border protection interdiction, and hearing and appeals); Lahr v. NTSB, 569 F.3d 964, 977 (9th Cir. 2009) (reversing district court and holding that FBI agents have cognizable privacy interest in withholding their names because release of FBI agents' identity would most likely subject agents "to unwanted contact by the media and others, including [plaintiff], who are skeptical of the government's conclusion" in investigation of crash of TWA Flight 800).

"[L]ower level officials, like [] FBI agents [], generally have a stronger interest in personal privacy than do senior officials." Lahr, 569 F.3d at 977 (citation omitted). The employees at issue in this case are all lower-level employees. Although Plaintiffs attach information from the OpenPayrolls website for certain ICE employees such as attorneys as Exhibit 2, the named employees listed in the exhibit do not include employees such as deportation officers or asylum officers, whose names have been redacted in this case. Nor do the OPM regulations cited by Plaintiffs show that the redacted information is per se public information, because "[t]he relevant regulation accordingly, by its own terms, does not disarm an otherwise available FOIA exemption. White Coat

18

Waste Project v. United States Dep't of Veterans Affs., 404 F. Supp. 3d 87, 104 (D.D.C. 2019) (citing 5 C.F.R. § 293.311(b). Moreover, even if information is available to the public via a different means, individuals retain a privacy interest. See, e.g., U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 770 (U.S. 1989) (holding that "the fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information") (cleaned up) (addressing Exemption 7(C)). Defendants submit the sworn declaration of ICE Acting FOIA Officer Fernando Pineiro in which he avers that publicly disclosing the affected employees' personal information could subject them to harassment (Pineiro Decl. ¶¶ 26-27), which is bolstered by various news articles from a variety of sources reporting ICE employees being harassed and targeted, including at their homes.

> **d)  Balance of the Privacy Interest Against the Public Interest in Disclosure**

The "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contributing significantly to public understanding *of the operations or activities of the government*." Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994) (cleaned up). "Information that reveals little or nothing about an

agency's own conduct does not further the statutory purpose." <u>Beck v. Dep't of Justice</u>, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (cleaned up).  Plaintiffs bear the burden of demonstrating that the release of the withheld documents would serve this interest.  <u>See</u> <u>Carter v. Dep't of Commerce</u>, 830 F.2d 388, 390–92 nn.8, 13 (D.C. Cir. 1987).  Plaintiffs have failed to meet that burden.

Guillen's only articulated interest in the names of the ICE and USCIS employees is so that he can contact them to interview or depose them in connection with his pending removal proceedings.  This is Guillen's personal interest, which fails to establish a valid public interest in knowing the redacted names and duty stations of ICE and USCIS employees in order to understand the operations or activities of the government.  To the extent that Guillen has a valid private interest in knowing the names of the affected employees in order to advance discovery in his administrative hearing, that is a discovery issue to be addressed by the administrative court.

Neither a plaintiff's interest in his own federal proceeding nor "the public's interest in fair [] trials or the even-handed administration of justice" qualify as a sufficient public interest; otherwise, "FOIA would be employed as a supplemental discovery mechanism."  <u>Peltier v. FBI</u>, 563 F.3d 754, 764 (8th Cir.

2009).  See also Long v. Off. of Pers. Mgmt., 692 F.3d 185, 194 (2d Cir. 2012)

("[A]n employee's name may be useful for investigating the behavior of

individual employees; but courts have been skeptical of recognizing a public

interest in this 'derivative' use of information, which is indirect and speculative.

Also discounted is the interest in identifying a federal employee by name in

order to make contact or conduct interviews.  Such a use is an example of the

'derivative theory' of public interest, and actually facilitates the invasion of the

employee's personal privacy.  The use of personnel files to contact government

employees in the hopes of uncovering malfeasance does not serve FOIA's

objectives.") (citations omitted); Solers, Inc. v. IRS, 827 F.3d 323, 333 (4th Cir.

2016) (upholding redaction of IRS employees' names and contact information

under Exemptions 6 and 7(C) because "the record contains no indication that

disclosing the names and contact information of these IRS employees would

serve the public interest").

Here, Plaintiffs fail to articulate how disclosure of the individual DHS

employees' names and duty stations would "contribut[e] significantly to the

public understanding *of the operations or activities of the government*."  Dep't of Def.

v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994) (cleaned up).  Weighing

the lack of public interest against the affected employees' privacy interest, the

Court holds that Exemption 6 was properly applied, particularly because it was

applied in conjunction with Exemption 7(C).

### 5.      Exemption 7(C)

#### a)      Exemption 7(C) Standard

Exemption 7(C) exempts from disclosure "records or information

compiled for law enforcement purposes, but only to the extent that the

production of such law enforcement records or information . . . could reasonably

be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C.

§ 552(b)(7)(C). "[T]he term 'law enforcement purpose' is not limited to criminal

investigations but can also include civil investigations and proceedings in its

scope."  Mittleman v. OPM, 76 F.3d 1240, 1243 (D.C. Cir. 1996).

"Exemption 7(C) requires [the Court] to balance the privacy interest in

maintaining" the privacy interest "against the public interest in their release."

U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press, 489 U.S. 749, 762 (1989).

"[T]he standard for evaluating a threatened invasion of privacy interests

resulting from the disclosure of records compiled for law enforcement purposes

[Exemption 7(C)] is somewhat broader than the standard applicable to

personnel, medical, and similar files [Exemption 6]." Id. at 756.

> [E]xemption 7(C) takes particular note of the strong interest of
> individuals, whether they be suspects, witnesses, or investigators, in
> not being associated unwarrantedly with alleged criminal activity.
> Exemption 7(C) requires us to balance the citizen's privacy interest
> against the public interest in disclosure.

Fitzgibbon v. C.I.A., 911 F.2d 755, 767 (D.C. Cir. 1990) (citations omitted).

### b) Whether ICE Is a Law Enforcement Agency or the Records Were Compiled for Law Enforcement Purposes

As a law enforcement agency, see, e.g., Barnard v. Dep't of Homeland Sec.,

598 F. Supp. 2d 1, 15 (D.D.C. 2009), ICE is entitled to the benefit of the Eighth

Circuit's rule that FOIA Exemption 7 "extends to all investigative files" of law

enforcement agencies without any need to consider "the purpose of a particular

investigation." Kuehnert v. FBI, 620 F.2d 662, 666 (8th Cir. 1980). The Eighth

Circuit holds that a law enforcement agency need not show a "law enforcement

purpose of a particular investigation [as] a precondition" to invoking Exemption

7. Id.

Moreover, even if the Court did not consider ICE to be a law enforcement

agency, the records at issue were compiled for law enforcement purposes

23

because they were created in the course of an ICE investigation related to

enforcement of federal immigration laws.  (See Pineiro Decl. ¶¶ 19-21.)  See also

Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996) ("A record is deemed to have

been compiled for such a purpose if it was created or acquired in the course of an

investigation related to the enforcement of federal laws, and the nexus between

the investigation and one of the agency's law enforcement duties is based on

information sufficient to support at least a colorable claim of its rationality.")

(cleaned up).  The asylum officer whose name is redacted is a USCIS employee;

however, that individual, a DHS employee, was involved in law-enforcement-

related work in the same set of documents.

### c)      Unwarranted Invasion of Privacy

"Generally, government employees and officials, especially law

enforcement personnel, have a privacy interest in protecting their identities

because disclosure could subject them to embarrassment and harassment in the

conduct of their official duties and personal affairs."  Moore v. Bush, 601 F. Supp.

2d 6, 14 (D.D.C. 2009) (cleaned up).  See also Peltier v. FBI, 563 F.3d 754, 762, 766

(8th Cir. 2009) (upholding application of Exemption 7(C) to "state and local law

enforcement personnel").  As noted with respect to Exemption 6, revelation of

the affected employees' names could expose them to harassment, as well as

unwanted contact by Plaintiffs.

> One who serves his state or nation as a career public servant is not
> thereby stripped of every vestige of personal privacy, even with
> respect to the discharge of his official duties.  Public identification of
> any of these individuals could conceivably subject them to
> harassment and annoyance in the conduct of their official duties and
> in their private lives.

Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978) (footnote omitted); see also

Hulstein v. DEA, 671 F.3d 690, 695-96 (8th Cir. 2012) (upholding DEA's redaction

of names and signatures of DEA agents from reports).

### d)      Public Interest

"Where the privacy concerns addressed by Exemption 7(C) are present, the

exemption requires the person requesting the information to establish a sufficient

reason for the disclosure."  NARA v. Favish, 541 U.S. 157, 172 (2004).

> If a legitimate privacy interest is implicated under exemption 7(C),
> the individual making the FOIA request can trigger a balancing of
> public interests with the privacy interests by (1) showing that the
> public interest sought to be advanced is a significant one, an interest
> more specific than having the information for its own sake, and (2)
> showing the information is likely to advance that interest.  If the
> requester is claiming government wrongdoing, then the individual
> must produce evidence that would warrant a belief by a reasonable
> person that the alleged Government impropriety might have
> occurred.

Hulstein, 671 F.3d at 696 (cleaned up and citations omitted).

As noted with respect to Exemption 6, the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contributing significantly to public understanding *of the operations or activities of the government*."  Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994) (cleaned up).  "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose."  Beck v. Dep't of Justice, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (cleaned up).

As the Court explained with respect to Exemption 6, Plaintiffs have failed to articulate any public interest in the disclosure of the identities and duty stations of the individual ICE and USCIS employees who signed the redacted documents.  This lack of public interest is balanced against the fact that, "something, even a modest privacy interest, outweighs nothing every time."  Hulstein, 671 F.3d at 696.

The Court concludes that pursuant to a combination of Exemptions 6 and 7(C), Defendants have established legitimate grounds for the redactions

challenged by Plaintiffs.  Therefore, Defendants are entitled to summary

judgment on Count 6.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment [Docket No. 40] is
   **GRANTED**.

2. Plaintiffs' Cross-Motion for Summary Judgment [Docket No. 46]
   is **DENIED**.

3. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   September 30, 2021          s/Michael J. Davis
                                     Michael J. Davis
                                     United States District Court